In re the Commitment of Giles L. Smith:

State of Wisconsin, Petitioner-Respondent,

v.

Giles L. Smith, Respondent-Appellant.

Court of Appeals

*No. 99–0477. Submitted on briefs June 21, 1999.—Decided July 30, 1999.*

(Also reported in 600 N.W.2d 258.)

720

721

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jay E. Heit* and *Roger M. Hillestad & Associates* of Durand.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Sally L. Wellman,* assistant attorney general, of Madison.

Before Cane, C.J., Myse, P.J., and Hoover, J.

HOOVER, J. Giles Smith appeals an order denying his request to stay his ch. 980, STATS.,[1] trial while incompetent.[2] The circuit court determined that Smith was incompetent and was not likely to become compe-

---

[1] Chapter 980, STATS., concerns sexually violent person commitments.

[2] This is a permissive appeal from a nonfinal order under § 808.03(2), STATS.

tent, but ordered that he nonetheless proceed with his ch. 980 trial. The question before this court is whether a person found incompetent and unlikely to become competent can be tried under ch. 980. We hold that the legislature, by according to persons tried under ch. 980 all of the constitutional rights available to a defendant in a criminal proceeding, thereby intended to include the right to be competent at trial.

We further hold that the procedure to afford that right should adhere to § 971.14, STATS., to the extent possible. We therefore reverse the circuit court's order and remand for proceedings consistent with this opinion.

## FACTS

In 1989, Smith was convicted of first-degree sexual assault of a child. He was scheduled to be released on his maximum discharge date in January 1999. In December 1998, the attorney general filed a petition to commit Smith under ch. 980, STATS. The petition alleged that Smith suffers from pedophilia and paraphilia and that because of those disorders, there is a substantial probability he will engage in acts of sexual violence. The petition also alleged additional charges of sexual assault in 1991 and 1995 but does not disclose their disposition.

At the probable cause hearing, Smith's counsel questioned Smith's competency. Nevertheless, the circuit court decided to proceed and, based on testimony received, found probable cause to believe Smith is a sexually violent person. The court ordered Smith to undergo both ch. 980, STATS., and competency evaluations, although the court was "not certain at this point what [competency] means." The court stayed the ch. 980 proceedings pending a competency determination.

The circuit court held a competency hearing on February 5, 1999. The State acknowledged that it would not be able to meet its burden of proof to show that Smith is competent.[3] The court heard evidence that Smith suffers from mental retardation, was not competent to proceed with a ch. 980, STATS., proceeding and would be unable to attain competence. The court found that Smith "is not competent to stand trial and not likely to become competent." It denied Smith's request that the ch. 980 matter not proceed to trial while he is incompetent. Smith filed for leave to appeal the interlocutory order, and on March 10, 1999, we granted that request.

## STANDARD OF REVIEW

Whether a ch. 980, STATS., proceeding may proceed to trial against an incompetent respondent involves questions of constitutional law and statutory interpretation. We are not bound by the trial court's conclusions of law and decide the matter de novo. *State v. Curiel*, No. 97–1337, slip op. at 12 (Wis. July 2, 1999).

## ANALYSIS

The issue is whether a person who is incompetent may be tried in a ch. 980, STATS., proceeding. Although the State acknowledges that trying an incompetent for a crime violates the Fourteenth Amendment's due pro-

---

[3] The test for incompetence is well settled. A defendant may not be put to trial unless he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and] a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).

cess clause, it argues that ch. 980 is a civil proceeding in the nature of a civil commitment and the right not to be tried if incompetent has never been extended to prohibit involuntary commitments.[4] The State also asserts that the legislature never intended to extend the right to be competent at trial to a ch. 980 respondent.

Smith directs us to § 980.05(1m), STATS., which provides ch. 980 respondents with all of the constitutional rights afforded a defendant in a criminal action. This, he argues, includes the due process right not to be tried as an incompetent.

Whether § 980.05(1m), STATS., provides Smith with the right not to be tried while incompetent is a question of statutory construction. Our goal in statutory construction is to discern the intent of the legislature. *See State v. Rosenburg*, 208 Wis. 2d 191, 194, 560 N.W.2d 266, 267 (1997). To determine the legislature's intent, a court must first look to the language of the statute. *See N.E.M. v. Strigel*, 208 Wis. 2d 1, 7, 559 N.W.2d 256, 258 (1997). If that language unambiguously sets forth legislative intent, it is the court's duty to apply that intent to the case at hand and not look beyond the statute's language to determine its meaning. *Id.* If, however, a statute is ambiguous, a court should examine the scope, history, context, subject matter and purpose of the statute in order to determine the legislature's intent. *See State ex rel. Jacobus v. State*, 208 Wis. 2d 39, 48, 559 N.W.2d 900, 903 (1997). A statute is ambiguous if it is capable of

---

[4] The State engages in a lengthy discussion demonstrating that the constitution does not prohibit trying an incompetent ch. 980, STATS., respondent. Smith does not rely on constitutional guarantees.

being understood by reasonably well-informed persons in more than one way. *See id.*

Section 980.05(1m), STATS., provides in part:

> At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. *All constitutional rights available to a defendant in a criminal proceeding are available to the person.* (Emphasis added.)

We do not perceive any ambiguity in the language, nor have the parties described any. Under the statute, *all* constitutional rights available to a defendant in a criminal proceeding are available to Smith at his ch. 980 trial. If a criminal defendant has a right to be competent at trial, then so too does a ch. 980 respondent. This necessitates a review of the constitutional rights available to a defendant in a criminal proceeding with respect to competency.

█ The right to be competent during a criminal trial flows from the Fourteenth Amendment's due process clause. *See Medina v. California,* 505 U.S. 437, 439 (1992). It is well settled that trying an incompetent accused of a crime violates due process. *Pate v. Robinson,* 383 U.S. 375, 378 (1966). The criminal trial of an incompetent violates that person's right to a fair trial. *Id.* at 385. Competence to stand trial is rudimentary, for upon it depends the effective exercise of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so. *Cooper v. Oklahoma,* 517 U.S. 348, 354 (1996). The right is so fundamental that an

attorney in a criminal case has an affirmative obligation to raise the question when it exists, regardless of any strategic considerations. *State v. Johnson*, 133 Wis. 2d 207, 219–21, 395 N.W.2d 176, 182–83 (1986). Because a defendant in a criminal proceeding has a fundamental constitutional right to be competent at trial, we must conclude that § 980.05(1m), STATS., grants ch. 980 respondents the same right in order to give effect to the statute's clear language.

The unambiguous language of § 980.05(1m), STATS., notwithstanding, the State asserts that the legislature has not recognized a competency right in any involuntary commitment proceeding. It contends that such a right makes no sense because when a criminal defendant is incompetent, the State may pursue involuntary civil commitment[5] and ch. 980, STATS., is a civil commitment proceeding. While logical, the State's analysis ignores legislative intent as evidenced by the plain meaning of § 980.05(1m), and therefore we must reject it.

Although a ch. 980, STATS., action is a civil commitment proceeding. *State v. Carpenter*, 197 Wis. 2d 252, 258, 541 N.W.2d 105, 107 (1995), it shares many of the same procedural and constitutional features present in a criminal prosecution. *See Curiel*, slip op. at 25. Chapter 980 affords a respondent greater protections than a ch. 51, STATS., respondent. For example, a person can be committed under ch. 980 only if a twelve-person jury unanimously finds that the petition is proven beyond a

[5] Involuntary civil commitment or complete release are the two options available when a criminal defendant is incompetent to stand trial and not likely to become competent. *See State ex rel. Matalik v. Schubert*, 57 Wis. 2d 315, 328–29, 204 N.W.2d 13, 19 (1973).

reasonable doubt. *See* § 980.03, STATS. This contrasts with ch. 51, which permits commitment on a five-sixths jury verdict by clear and convincing evidence. *See* § 51.20(11) and (13)(e), STATS.

Despite some fundamental similarities to other commitment proceedings, ch. 980, STATS., ultimately is unique and distinct from the civil commitment chapters, addressing a particular type of individual who poses a specific threat. If anything, a ch. 980 case is more akin to a criminal proceeding because of the rights § 980.05(1m), STATS., affords.[6] That the legislature has not extended the competency right to other involuntary commitment proceedings is irrelevant. By virtue of § 980.05(1m), it has extended that right here. The State may, if it chooses, proceed with an involuntary commitment of an incompetent under another chapter.

The State further contends that our analysis should focus on the due process purposes underlying the competency requirement and that none of those purposes exist in ch. 980, STATS., actions. It asserts that due process does not require competency in a civil commitment because there are other procedural safeguards, and competency is largely meaningless in a commitment context. The commitments, it maintains, are based largely on psychiatric/psychological evaluations and are essentially determined by experts. We reject these contentions.

---

[6] Our supreme court recently recognized that because of the parallels between ch. 980, STATS., proceedings and criminal actions, review of ch. 980 proceedings will frequently involve applying much of existing case law involving evidentiary and constitutional issues in criminal cases. *State v. Curiel*, No. 97–1336, slip op. at 26 (Wis. July 2, 1999).

These arguments similarly ignore the statutory, as opposed to constitutional, basis of the competency right in ch. 980, STATS., proceedings. If we were to adopt the State's proposed inquiry into the purposes underlying the constitutional right, we would be hard-pressed to give effect to § 980.05(1m), STATS. The State's proposed inquiry renders the statutory language meaningless, a result to be avoided. *See County of Adams v. Romeo*, 191 Wis. 2d 379, 387, 528 N.W.2d 418, 421 (1995).

In addition, we view the right to be tried while competent as necessary to meaningfully exercise the other rights that § 980.05(1m), STATS., affords the respondent. The respondent should be able to assist in his or her defense. Contrary to the State's assertion that ch. 980, STATS., trials are essentially a battle of expert opinions, there are many potential factual issues that could provide a respondent with defenses. For example, the history relied upon by treatment providers or experts might be inaccurate. A respondent's record of offending might be materially incorrect. The respondent might be able to explain, give context to or refute characterization of his participation or attitude in treatment. Incidents occurring before or during incarceration relied upon by the State in pursuing commitment might be shown by the respondent to be subject to differing interpretations. The respondent might wish to testify as to his response or receptiveness to treatment or the likelihood of reoffending. Incompetency to assist presupposes that the respondent is not able to do these things. Fundamental fairness precludes criminal prosecution of a defendant who is not mentally competent to exercise his or her constitutional and procedural rights. *State ex rel. Matalik v. Schubert*, 57 Wis. 2d 315, 322, 204 N.W.2d

729

13, 16 (1973). The legislature must have intended that the right necessary for a meaningful exercise of the other constitutional rights be included under § 980.05(1m).

■

The State asserts that § 980.05(1m), STATS., does not really mean what it says; rather, it is shorthand, "a rather clumsy attempt to encompass the type of due process guarantees which must accompany the significant, potentially long-term, deprivation of liberty which may result from an involuntary commitment under ch. 980." We presume that the legislature chose its terms carefully and with precision to express its meaning. *See Johnson v. City of Edgerton*, 207 Wis. 2d 343, 351, 558 N.W.2d 653, 656 (Ct. App. 1996). The State would have us assume the legislature could not refine the statute to say what it meant. To accept the State's interpretation is to engage in rewriting the statute, not merely interpreting it. *See State v. Briggs*, 214 Wis. 2d 281, 288, 571 N.W.2d 881, 885 (Ct. App. 1997).

The State's "shorthand" analysis of § 980.05(1m), STATS., is further belied by the legislature, in other contexts, extending the abbreviated range of rights that the State suggests it did here. That language is, however, very different from that in § 980.05(1m). Section 51.20(5), STATS., provides: "[t]he hearings which are required to be held under this chapter shall conform to the essentials of due process and fair treatment .... " In contrast, § 980.05(1m) provides: "[a]ll constitutional rights available to a defendant in a criminal proceeding are available" to a ch. 980 respondent. We will not infer from § 980.05(1m)'s clear language a "clumsy" attempt to generally conform to due process requirements.

■ The State asserts that reading a competency requirement into ch. 980, STATS., eviscerates the legislature's goals of enhancing the accuracy of the proceedings and protecting the public. We disagree. Chapter 980's purpose is to protect the public and provide concentrated treatment to sexually violent persons. *Carpenter*, 197 Wis. 2d at 258, 541 N.W.2d at 107. It does not, however, apply to all sexually violent persons. The definition of a sexually violent person does not include a person who has allegedly committed a sexually violent offense but who was not convicted because he or she was found incompetent and unlikely to obtain competency. *See* § 980.01(7), STATS. The legislature obviously intended to deal with such a person under the other commitment proceedings available. *See* 971.14(6), STATS.; *In re Haskins*, 101 Wis. 2d 176, 304 N.W.2d 125 (Ct. App. 1980). Similarly, the legislature apparently intended that an incompetent ch. 980 respondent ought to be committed under chs. 51 or 55, STATS.

Finally, the State argues that the legislature does not have the authority to create or expand constitutional rights, as affording a ch. 980, STATS., respondent such rights would do. We reject this proposition. The legislature may create statutory rights. *See* WIS. CONST. art. IV, § 1. It can and does enact statutory rights that parallel constitutional rights. The basis for Smith's contention is statutory, not constitutional. We read § 980.05(1m), STATS., as creating a statutory right for ch. 980 respondents.

■ Because we conclude that the statute requires that a ch. 980, STATS., respondent be competent to be tried, there must be a procedure to afford this right to respon-

dents. Section 971.14, STATS., sets forth in detail the procedures for circuit courts to follow when there is reason to doubt a criminal defendant's competency to proceed at trial, conviction or sentencing. The statute provides for, inter alia, the appointment of experts to examine a defendant, the process for resuming the proceeding when a defendant regains competence, and the procedure for initiating civil commitment when a defendant is found unlikely to become competent within twelve months. We hold that a circuit court shall adapt § 971.14 to the extent practicable, to competency issues arising in a ch. 980, STATS., proceeding.

In conclusion, we determine that § 980.05(1m), STATS., provides a respondent with a statutory right to be competent at his trial. We also determine that the procedure to be used to effect that right should adhere to §§ 971.13 and 971.14, STATS., to the extent practicable. Because Smith is incompetent and unlikely to become competent, we reverse the court's order requiring him to proceed with his ch. 980 trial.

*By the Court.*—Order reversed and cause remanded with directions.