# IN THE COURT OF APPEALS OF IOWA

No. 14-1326
Filed March 23, 2016

THE ESTATE OF MERCEDES GOTTSCHALK BY CO-EXECUTORS
REBECCA RASSLER AND RICHARD GOTTSCHALK,
    Plaintiff-Appellant,

vs.

POMEROY DEVELOPMENT, INC. d/b/a POMEROY CARE CENTER,
    Defendant, and

STATE OF IOWA,
    Defendant-Appellee.

_____

POMEROY DEVELOPMENT, INC., d/b/a POMEROY CARE CENTER,
    Third-Party Plaintiff-Appellant,

vs.

STATE OF IOWA,
    Third-Party Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Calhoun County, Thomas J. Bice,
Judge.

    An estate and a nursing home appeal the district court's decision granting
summary judgment to the State of Iowa. **AFFIRMED.**

    Willis J. Hamilton of Hamilton Law Firm, P.C., Storm Lake, for appellant
Estate.

    David H. Luginbill and Conner L. Wasson of Ahlers & Cooney, P.C., Des
Moines for appellant Pomeroy.

    Thomas J. Miller, Attorney General, and Joanne Moeller, Assistant
Attorney General, Special Litigation Division, for appellee.

    Heard by Danilson, C.J., and Vogel and Potterfield, JJ.

**VOGEL, Judge.**

On interlocutory review, the Estate of Mercedes Gottschalk (the Estate) and Pomeroy Development, Inc. d/b/a Pomeroy Care Center (Pomeroy) appeal the district court's decision granting summary judgment to the State of Iowa. The Estate and Pomeroy claim the district court erred in concluding the State had no duty of care as a matter of law, and the Estate also claims the court erred in determining the State had sovereign immunity. Pomeroy claims there were genuine issues of material fact that prevented summary judgement and it was improper for the district court to grant summary judgment when there was a pending motion to compel discovery relevant to the issues before the court. Because we agree the State had no duty of care as a matter of law, we affirm the district court's decision.[1]

## I. Background Facts and Proceedings.

William Cubbage was a convicted sex offender, who was committed to the Civil Commitment Unit for Sexual Offenders (the CCUSO) on May 21, 2002. Cubbage had previously been convicted of "assault with intent to commit sexual abuse (in 2000), indecent contact with a child (1997 and 1991), and lascivious acts with a child (1987)." *In re Det. of Cubbage*, 671 N.W.2d 442, 443 (Iowa 2003). He had been diagnosed with pedophilia and a personality disorder not otherwise specified with antisocial and narcissistic features. In 2006 while he was committed at the CCUSO, he was also diagnosed with dementia of the Alzheimer's type, and his mental and physical functioning declined. It was

---

[1] The claims asserted by the Estate against Pomeroy were not part of the summary judgment proceeding and remain pending in district court.

mutually agreed between the director of the department of human services, the attorney general's office, and the public defender's office that Cubbage was unable to make further gains from his civil commitment at the CCUSO but also agreed Cubbage was seriously mentally impaired and needed full-time custody and care. On November 16, 2010, the district court entered an order placing Cubbage under an Iowa Code chapter 229 (2009) civil commitment and ordered Cubbage be placed at the Pomeroy Care Center until it was determined he no longer needed care. In entering this order, the district court determined Cubbage's decision-making process was significantly impaired due to this underlying Alzheimer's illness and found he was a danger to himself and others due to his dementia and executive dysfunction. With the civil commitment under chapter 229 in place, Cubbage's attorney filed a motion to discharge him from the CCUSO on November 24, 2010. The district court granted the discharge the same day. Cubbage was transferred to Pomeroy on December 8, 2010.

Prior to his arrival at Pomeroy, the treating team at the CCUSO met with the administrative staff at Pomeroy to discuss Cubbage's background including his sexual offenses and his physical ailments. Cubbage's behavior was discussed, and the CCUSO staff advised the Pomeroy employees that Cubbage was not likely to be a danger to others in the facility due to his diagnosis of pre-adolescent pedophilia. The main concern was to monitor Cubbage whenever children from the local school or day care were present in the facility.

On August 21, 2011, another resident at Pomeroy, Mercedes Gottschalk, was sexually assaulted by Cubbage. The assault was witnessed by a staff

member's child, who was walking through the hall and saw Cubbage in Gottschalk's room.

Gottschalk filed suit against Pomeroy, and later the State of Iowa, for negligence. Gottschalk specifically claimed the State was negligent in failing to prepare a safety plan for Cubbage after he was placed in the facility, in failing to inspect and determine that appropriate safety precautions were followed, and in decreasing nursing home oversight. After Gottschalk died, the Estate was substituted as plaintiff in the case. Thereafter, Pomeroy asserted a cross-claim against the State for contribution in the event it was found liable to the Estate. The cross-claim asserted the State was negligent in failing to supervise and monitor Cubbage while at Pomeroy, and in misrepresenting Cubbage was no longer a risk or threat to society or the elderly prior to his admission at Pomeroy.

The State filed a motion for summary judgment against the claims asserted by the Estate and Pomeroy on May 28, 2014, claiming it had no duty to prepare a safety plan or inspect and follow up after Cubbage was discharged from the CCUSO. It likewise asserted in response to Pomeroy's cross-claim that it had no duty to supervise or monitor Cubbage after he was discharged. Finally, the State asserted it was immune from claims for misrepresentation under Iowa Code section 669.14(4) (2013). The Estate filed a motion to compel discovery of documents the State had refused to produce. The State refused production by claiming the requested documents were protected and confidential under various provisions of the Iowa Code, and by asserting the attorney-client privilege and attorney-work-product doctrine. The Estate and Pomeroy also filed resistances to the State's motion for summary judgment.

The district court granted summary judgment to the State, agreeing the State owed no duty to provide a safety plan for Cubbage because he had been unconditionally discharged from the CCUSO in November of 2010. The court likewise found the State owed no common law duty to Gottschalk or Pomeroy to supervise or monitor Cubbage after he was discharged. Finally, the court held the doctrine of sovereign immunity prevented any claim of misrepresentation against the State under Iowa Code section 669.14(4). Because the court dismissed the claims against the State in their entirety, the court concluded the Estate's pending motion to compel discovery was moot.

From this ruling, both the Estate and Pomeroy filed petitions for interlocutory appeal, which were granted by the supreme court, which then transferred the case to this court.

## II. Scope and Standard of Review.

Our review of the district court's summary judgment decision is for the correction of errors at law. *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009). Summary judgment is proper "only if there is 'no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Iowa R. Civ. P. 1.981(3)). The district court must view the evidence in the light most favorable to the nonmoving party, and the party seeking summary judgment has the burden of proof. *Id.* Normally, questions of negligence are for the jury, but in exceptional cases, the issues may be decided as a matter of law. *Id.*

## III. Duty of Care.

The Estate claims the State had both a duty to warn the residents and a duty to ensure safety protocols were in place to prevent harm to the residents of the Pomeroy Care Center. Pomeroy likewise argues the State had a duty to Pomeroy because of the special relationship between Cubbage and the State by virtue of Cubbage's commitment to, and subsequent discharge from, the CCUSO. The Estate raises a new issue on appeal, namely that the State had a duty of care in discharging Cubbage from the CCUSO because the residents of the Pomeroy Care Center were within a foreseeable risk of harm and the State was aware Cubbage was a danger to himself or others, preventing the State from generally releasing Cubbage into the community at large.

### A. Error Preservation.

The State claims the Estate failed to preserve error on its claims that the State negligently placed Cubbage in the nursing home or negligently failed to warn the residents of his presence. Likewise, the State claims Pomeroy failed to preserve error on its claim the State negligently discharged Cubbage from the CCUSO. While these claims were raised in both the Estate's and Pomeroy's resistances to the State's motion for summary judgment, the district court did not address these claims in its ruling. Neither the Estate nor Pomeroy filed a motion under Iowa Rule of Civil Procedure 1.904(2), requesting the court to rule on whether the State owed a duty under these claims.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). If the district

court fails to rule on an issue properly raised by a party, that party must file a motion requesting a ruling in order to assert the claim on appeal. *Id.* There is nothing in the district court's ruling that indicates it considered the issues of negligent discharge, negligent placement, or failure to warn when granting summary judgment to the State. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." (citation omitted)). We thus agree with the State that neither the Estate nor Pomeroy preserved error on these claims.[2]

The State does not challenge error preservation with respect to the claims the district court addressed in its ruling. The court concluded there was no statutory duty to provide a safety plan because Cubbage was unconditionally discharged from the CCUSO. The court also ruled there was no common law duty to supervise or monitor Cubbage after he was discharged. Therefore, we confine our opinion on appeal to these issues, which were properly preserved.

---

[2] Even if we were to find these issues preserved, we would still find the State did not owe a duty with respect to a negligent discharge or negligent placement claim. It was not the State that discharged Cubbage from the CCUSO or that placed Cubbage in the Pomeroy facility. Those were decisions made by the district court. Neither Pomeroy nor the Estate made a claim against the district court for those decisions, and nor can they in light of judicial immunity. *See Blanton v. Barrick*, 258 N.W.2d 306, 308 (Iowa 1977) ("Few doctrines have been more settled than the absolute immunity of judges from damages for acts committed within their judicial jurisdiction. This immunity applies even when the judge is accused of acting maliciously and corruptly because as a matter of policy it is in the public best interest that judges should exercise their function without fear of consequences and with independence."). The extent of the State's role in Cubbage's discharge and placement was an agreement entered into between the department of human services, the attorney general's office, and Cubbage's legal representation that a recommendation be made to the court for Cubbage's discharge from the CCUSO and his placement in the Pomeroy facility. There is no allegation that the State acted improperly in entering into this agreement.

**B. Analysis.**

Whether a duty is owed under the particular facts of a case is a matter of law for the court's determination. *Hoyt v. Gutterz Bowl & Lounge L.L.C.*, 829 N.W.2d 772, 775 (Iowa 2013). Our supreme court has recently adopted the Restatement (Third) of Torts's articulation of the duty of care in negligence actions: "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." *Thompson*, 774 N.W.2d at 834 (quoting Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7(a), at 90 (Am. Law Inst. Proposed Final Draft No.1, 2005)). The supreme court noted the general duty of reasonable care will apply in most cases and the assessment of whether there is a duty no longer depends on the foreseeability of harm based on the specific facts of the case. *Id.* at 834–35. However, in exceptional cases the court may decide there is no duty or the duty should be modified because "an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases." *Id.* at 835 (quoting Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7(b) (Am. Law Inst. Proposed Final Draft No.1, 2005)). This countervailing principle or policy also does not depend on the foreseeability of harm. *Id.* An assessment of foreseeability is allocated to the factfinder in its determination of whether there was a breach of a duty, not a court's determination of whether such duty exists. *Id.*

A duty can also exist to a third party when there is a special relationship between the actor and another. *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 41(a) (Am. Law Inst. 2012) ("An actor in a special

relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship."). Examples of these special relationships in which a duty can be owed to a third party include "(1) a parent with dependent children, (2) a custodian with those in its custody, (3) an employer with employees when the employment facilitates the employee's causing harm to third parties, and (4) a mental-health professional with patients." *Id.* § 41(b).

Prior to *Thompson*, our supreme court determined when a special relationship existed between an actor and another person, such as between a psychiatrist and a patient, the special relationship can give rise to a duty to either control the behavior of the other person or to protect a third party. *See Leonard v. State*, 491 N.W.2d 508, 510–11 (Iowa 1992). However, the court determined the scope of that duty turns on the foreseeability of harm to the third party. *Id.* at 511. The court determined there were "strong public policy concerns about the potential for limitless liability when an individual's decision might affect the general public." *Id.* at 512. "We believe that the risks to the general public posed by the negligent release of dangerous mental patients would be far outweighed by the disservice to the general public if treating physicians were subject to civil liability for discharge decisions." *Id.* The court held "a psychiatrist owes no duty of care to an individual member of the general public for decisions regarding the treatment and release of mentally ill persons from confinement." *Id.*

While the *Leonard* court focused on foreseeability, a factor we no longer are to consider when determining whether a duty exists under *Thompson*, ultimately, the foreseeability discussion was part of the court's determination that

there were "strong public policy concerns" with imposing potentially limitless liability on the decision to release a mentally ill person. *Id.* Interpreting *Leonard* in light of our supreme court's adoption of the Restatement (Third) of Torts's new definition of duty, we conclude that the *Leonard* case was the exceptional case involving "an articulated countervailing principle or policy" that warranted "denying or limiting liability in a particular class of cases." *See Thompson*, 774 N.W.2d at 835 (quoting Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7(b) (Am. Law Inst. Proposed Final Draft No.1, 2005)).

The negligence alleged by the Estate and Pomeroy in this case with respect to the State was that the State owed a duty to supervise or monitor Cubbage after he was discharged from the CCUSO so as to protect the residents of Pomeroy.[3] However, upon the unconditional discharge of Cubbage from the CCUSO—a decision made by the district court—the special relationship between the State and Cubbage ended.[4] *See* Iowa Code § 229A.2(4) ("'Discharge' means an unconditional discharge from the sexually violent predator program. A person released from a secure facility into a transitional release program or released with or without supervision is not considered to be discharged."). After

---

[3] At the district court, the Estate also claimed the State owed a statutory duty to develop and implement a safety plan for Cubbage. *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 28 (Am. Law Inst. 2012) ("When a statute requires an actor to act for the protection of another, the court may rely on the statute to decide that an affirmative duty exists and to determine the scope of the duty."). The district court rejected this assertion in the summary judgment ruling, noting that the statute requiring the implementation of a safety plan only applied to patients who were subject to transitional release under section 229A.8A. Because Cubbage was unconditionally discharged under section 229A.10, there was no statutory duty for a safety plan. Neither party appeals this ruling of the district court, and we thus need not address it further.

[4] As noted above, any claim that the State was negligent in entering into an agreement for Cubbage to be discharged from the CCUSO was not ruled on by the district court and is thus not preserved for appellate review.

the district court issued the discharge order, the State had no ongoing obligation to monitor or supervise Cubbage.

Pomeroy claims the State's actions after the allegations of sexual assault arose against Cubbage show there is a factual dispute as to whether the State had an ongoing duty to supervise or monitor Cubbage. After the sexual assault came to light, Pomeroy contacted the physicians who had treated Cubbage at the CCUSO and those physicians visited Pomeroy, spoke to staff members, and offered training. However, the fact the State volunteered help to Pomeroy after the assault occurred does not establish the State owed a duty to the Pomeroy residents or to Pomeroy after Cubbage was unconditionally discharged from the CCUSO. We affirm the district court's grant of summary judgment to the State in light of the fact that there was no duty of care owed by the State after Cubbage's discharge from the CCUSO.

**IV. Sovereign Immunity.**

Next, the Estate claims the district court erred in concluding the State was immune from suit for claims based on misrepresentation. We note the Estate never asserted a cause of action for misrepresentation against the State. It was Pomeroy that sued the State alleging the State misrepresented Cubbage's likelihood to reoffend when the staff of the CCUSO met with Pomeroy's staff to discuss placing Cubbage in the facility. The State never made any representations to Gottschalk, her family, or the other residents of Pomeroy. It was Pomeroy, not the Estate, that suffered an adverse ruling when the district court concluded the State had sovereign immunity for claims of misrepresentation under Iowa Code section 669.14(4). However, Pomeroy does

not challenge the district court's sovereign immunity ruling on appeal. Because the Estate did not suffer as a result of this portion of the district court's ruling and because the Estate cannot raise claims on appeal on behalf of Pomeroy, we affirm the decision of the district court concluding the State had sovereign immunity for the misrepresentation claims asserted by Pomeroy. *See Vicorp Restaurants v. Bader*, 590 N.W.2d 518, 521 (Iowa 1999) ("It is true that a party may appeal only from an adverse judgment and not from a finding or conclusion of law not prejudicial, no matter how erroneous."); *Ackerman v. Lauver*, 242 N.W.2d 342, 347 (Iowa 1976) ("Without passing on the correctness of the trial court's decision, we hold [a party] cannot have a reversal because the court— correctly or incorrectly—decided the claim of two other litigants.").

## V. Factual Disputes.

Pomeroy asserts the district court was wrong to grant summary judgment when there were factual disputes regarding issues of material fact. Specifically, Pomeroy asserts there were issues of fact regarding whether the State acted negligently in discharging Cubbage from the CCUSO, and whether the State acted negligently in performing its role in the civil commitment of Cubbage at Pomeroy under Iowa Code chapter 229. As stated earlier, the actual discharge and placement decisions were made by the district court. Pomeroy did not preserve error to the extent it wanted to assert the State was negligent in its role in entering into an agreement with Cubbage's attorney to discharge Cubbage from the CCUSO under chapter 229A or any role it might have played in having Cubbage civilly committed and placed at Pomeroy under chapter 229. The district court did not address the negligent discharge or negligent placement

claims in the summary judgment decision and no motion under rule 1.904(2) was filed.  Thus, any claim of error alleging there were disputes regarding issues of material fact on these claims when the summary judgment was granted was not preserved for our review.

## VI.  Motion to Compel.

Finally, Pomeroy claims the district court erred in granting summary judgment when there was a pending motion to compel that was relevant to the very issues before the court.  First of all, we note it was the Estate's motion to compel, not Pomeroy's.  The pending motion to compel sought for the State to produce Cubbage's annual evaluations while he was at the CCUSO; the 90-day patient assessments of Cubbage; copies of all correspondence between the CCUSO, the Iowa Department of Human Services, and the Iowa Attorney General's office concerning Cubbage's transfer of care to the Pomeroy Care Center; and all documents reviewed by the physician who prepared the discharge evaluation of Cubbage.

Pomeroy claims the discovery is directly relevant to the State's duty of care.  The district court dismissed the State as a party based on its conclusion the State had no duty to supervise, monitor, or provide a safety plan after Cubbage was discharged from the CCUSO.  These discovery requests do not address whether the State had a duty to supervise, monitor, or provide a safety plan after Cubbage was discharged from the CCUSO.  The pending motion to compel discovery pertained to the claims that the State was negligent in entering into an agreement that discharged Cubbage from the CCUSO and placing him at Pomeroy, as well as negligent in failing to warn the residents of Pomeroy—

claims the district court did not address in its ruling on summary judgment. No one filed a motion under rule 1.904(2) requesting the court to address the State's duty pursuant to these claims. As we indicated above, these negligence claims have not been preserved for our review due to a lack of a rule 1.904(2) motion. Likewise, any claimed error based on the court's failure to consider these claims when determining how to rule on the motion to compel was also not preserved. We conclude the district court did not abuse its discretion in ruling that the motion to compel was moot in light of its decision on the motion for summary judgment. *See Keefe v. Bernard*, 774 N.W.2d 663, 667 (Iowa 2009) ("Our review of a ruling by the district court on a motion to compel discovery is for abuse of discretion.").

## VII. Conclusion.

Because we conclude the State did not owe a duty to supervise, monitor, or provide a safety plan for Cubbage following the district court's decision to unconditionally discharge Cubbage from the CCUSO, we affirm the district court's decision granting summary judgment to the State. To the extent that Pomeroy or the Estate assert claims that the State was in some way negligent in its role in the proceedings to discharge Cubbage or place him in the Pomeroy facility following his civil commitment, those claims are not preserved for our review. We affirm the decision of the district court concluding the State had sovereign immunity for the misrepresentation claims because Pomeroy did not seek appellate review of this decision. We likewise agree with the district court's decision that the motion to compel is moot because the motion did not seek discoverable information related to the claims addressed by the district court and

15

the parties did not preserve error on the negligent discharge or negligent placement claims.

**AFFIRMED.**